**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BARBARA L.
ON BEHALF OF M.D.L.,

      Plaintiff,

      v.

FRANK BISIGNANON,
  COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

No. 24 CV 50350

Magistrate Judge McShain

**MEMORANDUM OPINION AND ORDER**

Plaintiff Barbara L. appeals the Commissioner of Social Security's decision denying the application for benefits she filed on behalf of her minor son, M.D.L. For the following reasons, plaintiff's motion for summary remand [16] is denied, defendant's motion for summary judgment [22] is granted, and the denial of benefits is affirmed.[1]

**Background**

In October 2021, plaintiff applied for supplemental security income on behalf of M.D.L., alleging that M.D.L. became disabled on August 1, 2015. [13-1] 17. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge (ALJ). [*Id.*] 17-27, 66-72, 74-79. The Appeals Council denied review in June 2024, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g).[2]

The ALJ reviewed the application in accordance with the Social Security Administration's three-step process for determining whether a minor claimant is disabled. At step one, the ALJ found that M.D.L. had not engaged in substantial gainful activity since the application date. [13-1] 18. At step two, the ALJ determined

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [13-1], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge [6].

that M.D.L. had the following severe impairments: attention deficit hyperactivity disorder (ADHD) and oppositional defiance disorder (ODD). [*Id.*] 18-19. At step three, the ALJ concluded that M.D.L.'s impairments did not meet, medically equal, or functionally equal the severity of a listed impairment. [*Id.*] 19-27. The ALJ accordingly ruled that M.D.L. was not disabled.

## Legal Standard

Children are considered disabled if they have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations," that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations establish a three-step process to evaluate whether a child is disabled: (1) the child cannot be engaged in any "substantial gainful activity," 20 C.F.R. § 416.924(b); (2) the child must have a medically determinable impairment or combination of impairments that qualifies as "severe," 20 C.F.R. § 416.924(c); and (3) the impairment or impairments must meet, medically equal, or functionally equal the severity of one of the listings in the Social Security regulations, 20 C.F.R. § 416.924(d). The disability analysis for children is not work-focused (as it is for adults), and the relevant question is "whether the child's limitations meet one of the many listed categories of disability or are functionally equivalent to one of them." *McCavitt v. Kijakazi*, 6 F.4th 692, 693 (7th Cir. 2021).

At step three, if an impairment does not meet or medically equal a listing, the ALJ considers six domains of functioning to evaluate whether an impairment functionally equals a listing. 20 C.F.R. § 416.926a(b)(1). "These domains are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being." *Kristin H. v. O'Malley*, No. 20 CV 6362, 2024 WL 1677403, at *2 (N.D. Ill. Apr. 18, 2024). "To functionally equal a listing, the impairment must produce a 'marked' limitation in at least two domains of functioning or an 'extreme' limitation in one domain." *Id.* "If a child meets the above requirements–in other words, does not engage in substantial gainful activity and has a severe impairment that meets, medically equals, or functionally equals a listing– the child will be found disabled." *Id.* (internal quotation marks omitted).

The Court reviews the ALJ's decision to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (internal quotation marks omitted). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's

2

determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

The ALJ ruled that M.D.L. had no limitations in two functional domains (moving about and manipulating objects and health and physical well-being) and less than marked limitations in three other domains (acquiring and using information, attending and completing tasks, and ability to care for himself). [13-1] 20. The ALJ also concluded that M.D.L. had a less-than-marked limitation in interacting and relating with others until December 2022, when the limitation became marked. [*Id.*] Plaintiff contends that substantial evidence does not support the ALJ's ruling as to M.D.L.'s limitations with acquiring and using information, attending and completing tasks, and caring for himself. [16] 8-12. Plaintiff maintains that the ALJ merely summarized the evidence in the record without building a logical bridge from that evidence to her conclusion that M.D.L.'s limitations were less than marked. [*Id.*] 8-9. Plaintiff argues that the ALJ's errors were harmful because the ALJ "found marked limitations in the domain of interacting with others," such that a finding that M.D.L. had a marked limitation in any of these three domains would have resulted in a finding that M.D.L. was disabled. [*Id.*] 13.[3] The Court rejects these arguments for the following reasons.

### A.  Acquiring and Using Information

First, the ALJ's decision refutes plaintiff's argument that the ALJ "never explained how [the evidence] supported less than marked limitations" in acquiring and using information. [16] 9. The ALJ recounted a good deal of evidence that was consistent with plaintiff's claim that M.D.L.'s functioning in this domain was markedly impaired. That evidence included (1) the multiple in-class accommodations M.D.L. received, (2) observations from a psychological consultative examination indicating that M.D.L. had poor memory and an impaired ability to make calculations and compare objects, and (3) standardized tests showing that his reading level was in the 11th percentile and his math level was in the 2nd percentile. [13-1] 22-23. But the ALJ went on to conclude that M.D.L.'s deficits in this area were due, not to his severe impairments, but to his chronic absenteeism from school over a multi-year period:

> Despite the claimant's academic and testing performance below that of his peers, the record reflects low academic exposure to materials with excessive absences and several tardies. Requests for an Individualized

---

[3] Plaintiff also claims that the error was harmful because "the ALJ found marked limitations in attention and concentration," [16] 1, but that is a misstatement of the record. The ALJ did not separately evaluate M.D.L.'s limitations in "attention and concentration" or make any finding that M.D.L. was markedly limited in those areas. *See* [13-1] 20-27.

Education Program (IEP) have been declined given little or lack of exposure to recommended interventions. Diagnoses appeared to have been carried over from the CPS system onto his 504 Plan for the RPS system, 504 Plan meetings were often missed, and absent is any evidence of consistent use of medication or mental health counseling. As such, the undersigned finds the evidence supportive of less than marked limitations in this domain of functioning.

[*Id.*] 23-24.

This explanation satisfied the "most minimal of articulation requirements" to which the ALJ was subject. *Warnell*, 97 F.4th at 1053. Fairly read, the decision reflects that the ALJ was persuaded by the evidence that M.D.L.s poor academic performance was largely the result of M.D.L.'s absenteeism and his failure to take advantage of "interventions" that were offered to him. That finding–which plaintiff does not contest–had substantial evidentiary support. As the ALJ noted, M.D.L. transferred schools four times between October 2021 and April 2023, and "in 40 school days since attending [middle school in 2021], he had only attended 6 full days." [13-1] 23 (emphasis omitted). In 2022, M.D.L. was enrolled in two different middle schools: at the first school, he was absent for 21.5 days out of the 45 days that he attended this school; at the second, he was absent 11 days and tardy 17 times during the 30 days he attended that school. [*Id.*]. M.D.L. was also enrolled at two different schools in 2023: at the first school, he was absent 28 out of 92 days; at the second, he was absent eight times and tardy nine times during his 40-day enrollment period. [*Id.*]. Perhaps unsurprisingly, M.D.L.'s teachers "comment[ed] that his absences were affecting his learning and achievement," and the ALJ found that, because of his absenteeism, M.D.L. received "less exposure to materials and to any interventions available to him[,] particularly those noted in his 504 Plan." [*Id.*] 23, 25. Finally, and in further support of her conclusion that M.D.L.'s impairments did not cause a marked limitation, the ALJ noted that M.D.L. was receiving essentially no treatment during this time. *Cf. Shamp v. Bisignano*, 24-cv-516-jdp, 2025 WL 3012217, at *3 (W.D. Wis. Oct. 28, 2025) ("In evaluating the extent of a claimant's functional limitations, an ALJ is entitled to consider whether a claimant has received only conservative treatment and whether a claimant has refused recommended treatment."). Because the Court can "trace the path of the ALJ's reasoning from evidence to conclusion," *Sahar R. v. O'Malley*, No. 20 C 504, 2024 WL 117806, at *3 (N.D. Ill. Mar. 19, 2024), the Court rejects plaintiff's argument that the ALJ erred in evaluating M.D.L.'s ability to acquire and use information.

## B.    Attending and Completing Tasks

Second, the ALJ's conclusion that M.D.L. had a less-than-marked limitation in attending and completing tasks is not "so poorly articulated as to prevent meaningful review[.]" *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29,

4

2021) (internal quotation marks omitted). The ALJ acknowledged the evidence that plaintiff proffered to support her claim that M.D.L. had a marked limitation in this area, including (1) reports that M.D.L. was hyperactive, (2) classroom accommodations, (3) conflicting statements from teachers that M.D.L. was a bright, hard-working student who struggled to organize his thoughts and stay focused, (4) a report from April 2023 that M.D.L. sleeps in class and had hit students around him, and (5) the opinion of his ELA teacher that M.D.L. had only slight or obvious problems–rather than serious or very serious problems–in most activities relating to attending and completing tasks. [13-1] 24-25; *see also* [*id.*] 264, 371. Again, however, the ALJ was persuaded that M.D.L.'s attention-related difficulties at school were largely a product of his chronic absenteeism, and not of his severe impairments:

> While teachers have noted [a] need for the claimant to use time wisely and that more effort is needed, they have also commented that the claimant's absences were affecting his learning and achievement; his math grade in particular was affected by missing assignments. Notably, circumstances outside of the claimant's impairments such as several transfers within the relevant period, several tardies and excessive absences, resulted in less exposure to materials and to any intervention available to him particularly those noted in his 504 Plan. As such, the undersigned finds that the claimant has less than marked limitation in this domain of functioning.

[*Id.*] 25.

The ALJ also emphasized that, notwithstanding plaintiff's claim that M.D.L.'s impairments caused disabling limitations, there was "little evidence of consistent medical treatment or other interventions" for those impairments. [13-1] 25. M.D.L. did take a prescription medication in the fall of 2022, but he was no longer taking it as of December because of "how it made [him] feel." [13-1] 25. The ALJ also noted that, although M.D.L. was reportedly taking Ritalin at times in 2021 and early 2022, the record reflected "no follow up visits for titration in dosage after his initial prescription," "no reports of any unwanted side effects to medical providers," and no "request for alternative medication." [*Id.*]. Plaintiff faults the ALJ for supposedly failing to consider why M.D.L. did not continue with his medication regimen, *see* [16] 11, but this discussion demonstrates that the ALJ knew M.D.L. stopped the medication because of how it made him feel, did not complain to treaters about the medication's side effects, or request a different medication. Because the ALJ's decision permits the Court to trace the path of her reasoning, and because plaintiff does not argue that the less-than-marked limitation lacks substantial evidentiary support, the Court finds no basis for remand in the ALJ's evaluation of M.D.L.s ability to attend and complete tasks.

### C.     Ability to Care for Himself

Third, the Court can likewise trace the path of the ALJ's reasoning from the evidence of M.D.L.'s ability to care for himself to her conclusion that M.D.L. had a less-than-marked limitation in this area. The ALJ recounted evidence that M.D.L. (1) "leaves his shoes untied, puts things in his mouth that do not belong, and seems to break things when told to perform a task"; (2) presented with an adequate, well-nourished appearance but sometimes violated school dress codes; (3) experienced a decline in self-management skills in the fall of 2022 and spring of 2023; and (4) according to his ELA teacher, had (A) no problems in handling frustration, being patient, taking care of personal hygiene, caring for his physical needs, using good judgment regarding personal safety and dangerous circumstances, and responding appropriately to changes in his own mood and (B) obvious problems with identifying and appropriately asserting emotional needs, using coping skills to meet the daily demands of a school environment, and knowing when to ask for help. [13-1] 26; *see also* [*id.*] 267. Simply put, the Court cannot see–and plaintiff does not explain, *see* [16] 11-13–how any of this evidence would support (let alone compel) a finding that M.D.L. had a marked or greater limitation in this domain. *See Morales v. Bisignano*, 103 F.4th 469, 471 (7th Cir. 2024) (claimant must "point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record"). In any event, the ALJ's decision reflects that she found the opinion of M.D.L.'s ELA teacher "persuasive" because the teacher "had [the] opportunity to observe the claimant over a course of 2 months for 2 periods a day" and was familiar "with the progress and behavior that can reasonably be expected from a child of the claimant's age and ability[.]" [*Id.*] 27. Given that reasonable determination, and considering the scant evidence that M.D.L.'s limitations "interfere[ ] seriously with the ability to independently initiate, sustain, or complete activities[,]" 20 C.F.R. § 416.926a(e)(2)(i), the Court finds that substantial evidence supports the ALJ's conclusion that M.D.L. had a less-than-marked limitation in this domain.

### Conclusion

Plaintiff's motion for summary remand [16] is denied, defendant's motion for summary judgment [22] is granted, and the denial of benefits is affirmed

_____

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 26, 2026**

6